# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARY ELLISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 09-cv-431-DRH |
| | ) |
| MICHAEL MINNEAR, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff Gary Ellison, currently an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Upon careful review of the

complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

**THE COMPLAINT**

Ellison alleges that in 2002, while he was incarcerated in the Illinois River Correctional Center, Defendant Minnear (a detective with the Illinois State Police) asked Defendant Curie (in the Intelligence unit of the Illinois Department of Corrections) to solicit inmates to act as informants to interrogate Ellison. Ellison was then housed with two homosexual inmates (one of whom was Tommie Armstrong), who began to sexually harass him, eventually provoking him into a fist-fight. A blood sample was then taken from Ellison, ostensibly to test for any blood-borne diseases he may have contracted from one of the other inmates involved in the fight.

In July 2003, again at the request of Minnear, Armstrong was housed with Ellison in an attempt to intercept Ellison's communications. Because Ellison had attempted to avoid Armstrong, Defendant John Doe 1 filed a false disciplinary report against Ellison and placed him in segregation, where he was subjected to sexual harassment by Armstrong.

At some point, Ellison was released on parole.[1] He alleges that Minnear asked his parole officer (Truillio) to issue a parole violation, but Truillio refused. Curie then had Ellison placed on electronic home monitoring, even though it was not a condition of his parole. Later Ellison obtained a job that required an exception from home monitoring, with Truillio approved.

In late 2003 or early 2004, Ellison was later arrested by Minnear, allegedly without probable cause or warrant, and taken to the Cook County Jail. While there, Ellison was severely beaten by

---

[1] According to portions of the trial transcript attached to the complaint, Ellison was interrogated by inmates at Illinois River in July or August of 2003, and Ellison was due to be released approximately one month later (*see* Doc. 1, pp. 23-4).

Defendants John Doe 2, John Doe 3, and John Doe 4. Ellison was then handcuffed in the lobby of the jail's medical unit for several hours, as Defendant John Doe 5 refused to request medical attention for Ellison's injuries.

During Ellison's criminal trial in 2004,[2] he learned of the actions taken by Minnear and Curie with respect to the inmate informants at Illinois River. Based on the allegedly false testimony provided by Armstrong, Ellison was convicted and returned to I.D.O.C. custody. He alleges that Curie and Minnear contacted John Doe 6 (an officer at Menard) and asked his cooperation in thwarting Ellison's attempts to pursue his criminal appeal as well as any possible civil action he might instigate against them. When Ellison did not stop his litigation, he asserts that he was deliberately issued a MapQuest printout showing directions from Menard to Riverdale, Illinois, and an unauthorized identification card. Possession of these items led to a higher "escape risk" category for his classification; he was also sent to segregation in October 2007 for possession of those items. While in segregation at Menard, Ellison states that Defendants Hale and John Doe 7 denied him food on five separate occasions, allegedly to punish him for persisting to use the law library. Eventually, that disciplinary ticket was overturned.

### EVENTS AT ILLINOIS RIVER AND COOK COUNTY JAIL

In a Section 1983 case, courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). Illinois law provides a two-year statute of limitations for personal injury actions. 735 ILCS 5/13-202. Therefore, Section 1983 claims arising in Illinois are governed by a two-year statute of

---

[2] Ellison is currently serving a 75-year sentence for murder based on a 2004 conviction in Cook County (http://www.idoc.state.il.us/subsections/search/inms.asp, accessed Dec. 29, 2009). *See People v. Ellison*, Case No. 04CR1976101 (Cook County, Ill., filed 2004).

limitations. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993); *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992). Federal law, however, governs the accrual of such claims. *Kelly*, 4 F.3d at 511.

A Section 1983 claim accrues when "a plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly*, 4 F.3d at 511. As Ellison clearly admits, all the actions taken by Minnear, Curie, and Does 1-5 occurred sometime in 2003-04 or earlier; thus his Section 1983 action should have been filed within two years, or by 2005-06. However, Ellison did not file this action until June 2008, two or three years too late. Therefore, since Ellison's complaint was not filed within the statute of limitations period, his claims against Minnear, Curie, and Does 1-5 do not survive review under 28 U.S.C. § 1915A.

Furthermore, it appears that Ellison may be seeking damages from Minnear and Curie for their respective roles in obtaining allegedly false evidence against him that was used to convict him. However,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other

      bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994). "We do not engraft an exhaustion requirement upon § 1983, but rather deny the existence of a cause of action. Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Id.* at 488. Nothing in the record suggests that Ellison's current conviction has been invalidated by any court; thus, he has no civil remedy against Minnear or Curie for any part they may have played in obtaining his conviction.

### **EVENTS AT MENARD**

Ellison believes he was deliberately "set up" by Hale, at Minnear's encouragement, which resulted in a disciplinary ticket and subsequent punishment in segregation.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or

she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In this case, Ellison was sent to disciplinary segregation for an unspecified amount of time, but nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, his due process claim is without merit.

As for his claims regarding deprivation of food by Hale and Doe 6, to establish a violation of the Eighth Amendment, a prisoner must prove two elements: (1) the deprivation alleged is sufficiently serious such that it resulted in the "denial of the minimal civilized measure of life's necessities" and (2) prison officials knew of a substantial risk to the prisoner but failed to take reasonable steps to prevent the harm from occurring. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In some circumstances, a prisoner's claim that he was denied food may satisfy the first element but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ( it would be an Eighth Amendment violation to deny a prisoner of an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some

circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation; *Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health.").

Ellison alleges he missed just five meals, and he was does not allege harm to his health; his claims therefore do not rise to the level of a constitutional violation.

**SUMMARY**

In summary, the complaint does not survive review under § 1915A. Accordingly, this action is **DISMISSED** with prejudice. Ellison is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**

**DATED:** December 29, 2009.

   /s/   DavidRHerndon
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**